UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN P. FENSTERER,                              Case No. 12-13166

           Plaintiff,                  Paul D. Borman
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 13)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On July 18, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Paul D. Borman

referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 3).  This matter is before the Court on

cross-motions for summary judgment.  (Dkt. 9, 13).

### B.   Administrative Proceedings

Plaintiff filed the instant claims on May 10, 2010, alleging that he became

disabled on November 12, 2008. (Dkt. 7-2, Pg ID 33). The claim was initially

disapproved by the Commissioner on January 5, 2011. (Dkt. 7-2, Pg ID 33).

Plaintiff requested a hearing and on June 10, 2011, plaintiff appeared with an

attorney before Administrative Law Judge (ALJ) John Dodson, who considered the

case de novo. In a decision dated July 29, 2011, the ALJ found that plaintiff was

not disabled. (Dkt. 7-2, Pg ID 33-40). Plaintiff requested a review of this decision

on August 15, 2011. (Dkt. 7-4, Pg ID 108-110). The ALJ's decision became the

final decision of the Commissioner when, after the review of additional exhibits,[1]

the Appeals Council, on June 29, 2012, denied plaintiff's request for review. (Dkt.

7-2, Pg ID 24-26); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

motion for summary judgment be **DENIED** in part, that the findings of the

Commissioner be **REVERSED** in part, and that this matter be **REMANDED**

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

under sentence four.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 40 years of age on the alleged disability onset date.  (Dkt. 7-2, Pg ID 39).  Plaintiff's past relevant work included work as a heavy equipment operator, a skilled position performed at the heavy level of exertion.  (Dkt. 7-2, Pg ID 39).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 7-2, Pg ID 35).  At step two, the ALJ found that plaintiff's degenerative disc disease was "severe" within the meaning of the second sequential step.  (Dkt. 7-2, Pg ID 35).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID 35).  At step four, the ALJ found that plaintiff could not perform his past relevant work.  (Dkt. 7-2, Pg ID 39).  The ALJ concluded that plaintiff had the residual functional capacity to perform sedentary work as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) except that the claimant may
> occasionally balance, climb, crawl, crouch, kneel, stoop,
> climb ramps and stairs, but may never climb ladders,
> ropes, or scaffolds; the claimant must be afforded the
> opportunity to sit or stand at will, for pain control; the
> claimant must avoid concentrated exposure to workplace

> hazards, such as dangerous moving machinery and
> unprotected heights, and must avoid concentrated
> exposure to extremes of heat and cold.

(Dkt. 7-2, Pg ID 36).  At step five, the ALJ denied plaintiff benefits because he

could perform a significant number of jobs available in the national economy.

(Dkt. 7-2, Pg ID 40-41).

### B.    Plaintiff's Claims of Error

Plaintiff asserts that the ALJ failed to properly assess the side effects from

his pain medications, and failed to properly assess plaintiff's complaints of pain

along with his credibility.  According to plaintiff, the ALJ's credibility finding is

"circular."  Plaintiff contends that the record evidence establishes that he does not

have the capacity to be productive 55 minutes out of each hour and would miss

more than two days per month due to his medical condition.  Plaintiff argues that

the ALJ's credibility analysis essentially required that plaintiff be helpless and bed-

ridden in order to be considered disabled.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner asks the Court to reject plaintiff's argument that the ALJ

failed to consider side effects of his medication because plaintiff ignores repeated

statements from his treating physician, who prescribed the medications, that he

experienced no side effects and that the medications were doing well.  The

Commissioner acknowledges that although the ALJ only cited one such reference

as an example, the record is replete with them.  (Tr. 195, 202, 207, 209, 212, 213, 259, 262, 275, 277, 280, 286, 292-93, 311, 318).  In contrast to what the Commissioner characterizes as "this consistent line of evidence," plaintiff refers to a one-time examination by Dr. Mara Sax.  Dr. Sax's note refers to unspecified side effects, and states that plaintiff agreed to taper down his narcotic use because those medications were not helping.  (Tr. 310).  According to the Commissioner, plaintiff did not follow Dr. Sax's advice, and instead returned to his treating physician, who continued to prescribe narcotics and continued to report a lack of side effects. Furthermore, Dr. Sax did not indicate whether her conclusion about plaintiff's side effects came from plaintiff's self-report or from her own objective observations. The ALJ specifically observed that plaintiff could drive (Tr. 15); indeed, he drove himself to the consultative examination.  (Tr. 312).  The Commissioner contends that the fact the plaintiff could drive himself to the consultative examination, approximately 20 minutes away, supports the ALJ's rejection of his testimony that he was too drugged from the effects of his medication to work.  According to the Commissioner, not only does the mismatch between plaintiff's claims on the one hand and his activities and medical records on the other support the ALJ's conclusion about side effects, it also constitutes an inconsistency that the ALJ could consider in assessing plaintiff's credibility.

        The Commissioner next maintains that the rest of plaintiff's credibility

argument essentially challenges the ALJ's residual functional capacity assessment, and the ALJ adequately explained his credibility finding.  The ALJ noted that plaintiff had provided inconsistent information about his activities.  Plaintiff told his physical therapist that he had problems with basic activities of daily living such as brushing his teeth.  (Tr. 296, 298, 300).  And on his function report, he claimed that he ate in bed because he could not sit at the table.  (Tr. 125).  Yet, as late as April 2011, he reported that he could walk for more than 200 feet without assistance and could go shopping for groceries, prepare his own meals, and do his own housework with some help.  (Tr. 335).  The consultative examiner stated in December 2010 that plaintiff was independent in self-care and activities of daily living.  (Tr. 314).  The Commissioner contends that the ALJ could reasonably conclude that plaintiff's various statements about his abilities were inconsistent, and could consider this inconsistency in assessing his credibility.  While plaintiff criticizes the ALJ's discussion of his activities, the regulations not only allow but affirmatively require the ALJ to consider these activities.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  Contrary to plaintiff's assertion, the Commissioner says that the ALJ did not equate daily activities to the ability to do full-time work, but instead considered them as part of the evidence in the record as a whole.  The Commissioner also maintains that some of the activities admitted by plaintiff do, in fact, suggest that he was capable of sedentary work with additional restrictions. For

instance, in August 2009, he wrote that "weed wacking" (i.e., using a string trimmer) made his pain worse. (Tr. 230). For plaintiff to make this statement, he must have been using a string trimmer. The next month, he reported that "standing on a ladder" made his pain worse, again showing that he had been performing this activity. (Tr. 226). According to the Commissioner, these activities cast doubt on plaintiff's claims about his abilities, and suggest that he could do more than he admitted.

The ALJ also noted certain inconsistencies in the medical evidence of record. This included discogram results that a treating physician called "completely discordant." (Tr. 168). While acknowledging that plaintiff's MRI findings were consistent with the presence of some pain, the ALJ also noted that the degenerative disc disease was identified as "moderate" and there was no neurological impingement. (Tr. 13, 187). While there was evidence of disc bulging, there was no evidence of any herniation and only "mild" narrowing of the neural foramina. (Tr. 187). There was also no evidence of any other stenosis (Tr. 187). And as noted, the discogram tended to confirm the cause of plaintiff's back pain was "completely discordant with expectations." (Tr. 169, 171). While the ALJ did not base his decision on objective medical evidence alone, he could consider the discrepancy between the relatively modest findings on medical testing and plaintiff's claims of intense pain notwithstanding heavy doses of narcotics.

The ALJ also concluded that "[p]hysical examinations in the record, while noting some limitations, generally report results indicative of the claimant's ability to engage in less strenuous forms of work." (Tr. 14). For example, neurologist Dr. Elskens noted full, painless range of motion without tenderness or instability (Tr. 173). Muscle strength and tone were normal. (Tr. 173). While increased sensation was noted in the feet, ankles, and calves, it was in a stocking distribution (Tr. 173) rather than in a dermatonal distribution.

The consultative examiner noted no evidence of muscle spasm and no gait abnormalities. (Tr. 313). Plaintiff could walk on his heels and toes, and could squat fully. (Tr. 313). Straight leg raising tests were negative (i.e., they did not produce any radicular pain). (Tr. 313). Senses, reflexes, and muscle strength were all normal. (Tr. 314). The examiner concluded that there were no neurologic deficits and no clinical evidence of lumbar disc herniation or radiculopathy. (Tr. 314). While acknowledging limited range of motion, the examiner noted that this was "performed actively by the patient." (Tr. 314). The examiner did not think plaintiff had any restrictions, even as far as his prior employment. (Tr. 315). In addition to the examinations by Dr. Elskens and the consultative examiner, the ALJ also noted the findings from the examinations by plaintiff's treating source. Muscle strength was normal (Tr. 338), and while straight leg raising led to complaints of back pain, it did not cause leg pain (Tr. 337) and thus was negative.

Report and Recommendation
Cross-Motions for Summary Judgment
*Fenster v. Comm'r*; Case No. 12-13166

No muscle atrophy was noted, and while lumbar range of motion was reduced, it was significantly better in three of four measurements when compared to the consultative examiner's results.  (Tr. 319, 338 (60 versus 30 degrees flexion; 20 versus 10 degrees extension; and 25 versus 20 degrees right lateral flexion)).

Although the ALJ chose to give this opinion evidence limited weight, the Commissioner contends that the ALJ's decision is fully consistent with the medical opinion evidence in the record.  Plaintiff's treating pain specialist, Dr. Kole (Tr. 205), stated that he could not return to work as a heavy duty operator, a conclusion that the ALJ concurred with.  According to the Commissioner, Dr. Kole implied that plaintiff could do other work, stating that he recommended a functional capacity evaluation and then retraining for another job that would accommodate plaintiff's limitations.  (Tr. 205).  Treating neurologist Dr. Elskens wrote a letter about plaintiff's ability to return to work as an operating engineer in which he concluded that plaintiff's condition "may make it difficult for him to do his regular employment" and suggesting a functional capacity assessment.  (Tr. 168).  According to the Commissioner, there is no indication that Dr. Elskens ever restricted plaintiff's activities.  The ALJ went further than Dr. Elskens' opinion, as he concluded that plaintiff could not do his regular employment.  Notably, despite plaintiff's representation by experienced counsel before the Commissioner, there is no evidence that any of plaintiff's doctors were asked to comment on functional

limitations.

Furthermore, the Commissioner maintains that the ALJ's decision is consistent with many of plaintiff's own statements. Plaintiff wrote on his disability report that his condition limited his ability to work in several ways. His employer had relieved him of duty at times because he was taking pain medications. (Tr. 124). As his condition progressed, he could not work with machines that bounced around significantly. (Tr. 124). Construction sites were "anything but handicap access[i]ble," and he could no longer climb to his work station. (Tr. 124). It is unsurprising that someone with plaintiff's condition could not do the physically demanding work that he was accustomed to. However, plaintiff denied a recent traumatic onset (Tr. 129) and instead stated that he had been having back problems since age 14 that had progressively worsened. (Tr. 292). Although plaintiff was unsuccessful in his attempt to return to his heavy work, his belief that he might be able to do that work hardly shows that he could not successfully perform work with much lower physical demands. As noted above, the evidence shows that plaintiff was engaging in activities like using a string trimmer and standing on ladders well after his alleged onset date, even though they increased his pain. (Tr. 226, 230). Plaintiff's statements on his disability report form, combined with his activities after his alleged onset, suggest that his impairments reached the point where he could no longer do his past work in late 2008, just as the ALJ concluded.

However, given the gradual nature of plaintiff's condition, the Commissioner asserts that plaintiff has not offered any explanation as to why he could work for over 15 years as an operating engineer despite having gradually worsening back pain throughout that time, but in short order reached a point where he could not do even a subset of sedentary work.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his

> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

A major flaw in the ALJ's analysis is the improper consideration of the

opinion of a non-physician single decision-maker.[2]  (Dkt. 7-2, Pg ID 38).  In this

case, the single-decision maker (SDM) model was used pursuant to 20 C.F.R.

§ 404.906(b)(2).  This regulation provides streamlined procedures as an

experiment, in which State Agency disability examiners may decide cases without

documenting medical opinions from State Agency medical consultants.  The

"single decisionmaker model" was an experimental modification of the disability

determination process that happens to have been used in Michigan.  *See Leverette*

*v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011).  This experiment eliminated the

reconsideration level of review and allowed claims to go straight from initial denial

to ALJ hearing.  *Id.*  Most significantly, it allowed the state agency employee (the

single decisionmaker) to render the initial denial of benefits without documenting

------

[2]  The Court raises this issue *sua sponte*, given the serious nature of the error and the
pattern of repetition of this same error since the implementation of the single decision-maker
model in Michigan. Notably, in Social Security cases, the failure to submit a particular legal
argument is "not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua
sponte*, that grounds exist for reversal. *Reed v. Comm'r of Soc. Sec.*, 2012 WL 6763912, at *5
(E.D. Mich. 2012), citing *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *1-3 (E.D. Mich.
2010), adopted by 2013 WL 53855 (E.D. Mich. 2013); *see also Buhl v. Comm'r of Soc. Sec.*,
2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not
prevent the Court from identifying error based on its own review of the record and ruling
accordingly), adopted by 2013 WL 878918 (E.D. Mich. 2013).

medical opinions from the state agency medical consultants. *Id.*, citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. Plaintiff's physical impairments were evaluated by an SDM, James Joy, who apparently concluded that his impairments were not disabling. (Dkt. 7-3, Pg ID 85). Thus, no medical opinion was obtained at this level of review, in accordance with this model. While the ALJ gave "consideration" to the SDM's opinion, it was clear that he did not give this opinion significant weight. *See Hensley v. Comm'r of Soc. Sec.*, 2011 WL 4406359, at *1 (E.D. Mich. 2011) (remand warranted because ALJ erroneously credited an RFC assessment as having been completed by a physician, as opposed to the non-physician single decisionmaker who wrote it).

However even, if the ALJ had not relied on the SDM opinions, the lack of any medical opinion on the issue of equivalence is in itself an error requiring remand. As set forth in *Stratton v. Astrue*, — F.Supp.2d —; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for

> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion

evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter. *Id.* at *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic

principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, at \*12, citing SSR 96-6p, 1996 WL 374180, at \*3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at \*3 (D. Me. 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question.").  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record.  (Dkt. 97-3, Pg ID 85).

The great weight of authority[3] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, at \*13 (collecting

---

[3] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164, at \*2 n. 3 (D. Me. 2003).

cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").  While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive.  In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use.  Nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned

cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases. Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model. *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (A medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated). And, if the consulting examiner offered no opinion on equivalence, the ALJ is required to obtain an updated medical report addressing equivalence. *See e.g.*, *Caine v. Astrue*, 2010 WL 2102826, *8 (W.D. Wash. 2010) (Where the state agency consultant offered no findings on equivalence, the ALJ should obtain an updated medical expert opinion in order to meet her obligation to fully and fairly develop

the administrative record.)

While the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalence requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012). For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments. In the view of the undersigned, given that the opinions of a medical advisor must be obtained, plaintiff's credibility will necessarily have to be re-assessed in full after such an opinion is obtained.

A related problem in this case is the lack of any medical opinion regarding plaintiff's functional limitations. One consulting physician offered the opinion that plaintiff could return to his prior work and the ALJ rejected this opinion. No treating physician or any other consulting or examining physician offered any opinions regarding plaintiff's functional limitations, except that he could not return to his prior work and that functional capacity evaluations were in order. Thus, we are left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion.

Report and Recommendation
Cross-Motions for Summary Judgment
*Fenster v. Comm'r*; Case No. 12-13166

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).

The ALJ also reserves the right to decide certain issues, such as a claimant's RFC. 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against

relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").  As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."

*Deskin*, 605 F.Supp.2d at 912, quoting *Rohrgerg v. Apfel*, 26 F.Supp.2d 303, 311

(D. Mass. 1998) (internal citation omitted)[4]; *see also Mitsoff v. Comm'r of Soc.*

*Sec.*, 2013 WL 1098188, *8 (S.D. Ohio 2013) (collecting cases).

There are limited occasions when the medical evidence is so clear, and so

undisputed, that an ALJ would be justified in drawing functional capacity

conclusions from such evidence without the assistance of a medical source.

*Mitsoff*, 2013 WL 1098188, *9, citing *Deskin*, 605 F.Supp.2d at 912 ("To be sure,

where the medical evidence shows relatively little physical impairment, an ALJ

permissibly can render a commonsense judgment about functional capacity even

without a physician's assessment").  This does not appear to be such a case,

particularly where the treating physicians rendered no opinions about plaintiff's

functional capacity and two of them opined that a functional capacity evaluation

was required to make such an assessment.  (Dkt. 7-7, Pg ID 233; Dkt. 7-7, Pg ID

196).  If two treating medical professionals could not offer such an opinion on this

record, then it was quite likely beyond the scope of the ALJ's ability to render such

a judgment on plaintiff's functional capacity.  Thus, the undersigned concludes that

---

[4] "Properly understood, *Deskin* sets out a narrow rule that does not constitute a
bright-line test."  *Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011).
Rather, *Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC
determination based on no medical source opinion; or (2) where an ALJ made an RFC
determination based on an outdated source opinion that did not include consideration of a critical
body of objective medical evidence.  *Id.*  In this case, there is no medical source opinion on
plaintiff's residual functional capacity.

this matter should also be remanded so that the ALJ can obtain the opinion of a medical advisor on plaintiff's residual functional capacity.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 18, 2013                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 18, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kenneth F. Laritz, Vanessa Miree Mays, AUSA, and Jason Scoggins, Social Security Administration.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7850
                                       tammy_hallwood@mied.uscourts.gov